

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA
UNITED STATES DISTRICT JUDGE
14614 UNITED STATES COURTHOUSE
INDEPENDENCE MALL
PHILADELPHIA, PENNSYLVANIA 19106

CHAMBERS OF
**JUDGE PAUL S. DIAMOND**
UNITED STATES DISTRICT JUDGE

(267) 299-7730

July 8, 2025

Seth D. Carson
1628 Parker Avenue
Philadelphia, PA 19145

In the Matter of: Seth D. Carson
Miscellaneous No. 24-5

Dear Mr. Carson:

I have enclosed a copy of the Report and Recommendation of the three-judge panel in the above matter. It is being filed under seal in accordance with our Local Rule.

If you have any objections, they must be filed under seal within fourteen (14) days. If you do not intend to file objections, please let me know as soon as possible.

Very truly yours,

Paul S. Diamond, J.

cc:    Judge John M. Gallagher
Judge Mia R. Perez
Amy L. Kurland

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | MISCELLANEOUS |
| | : | |
| SETH D. CARSON | : | No. 24-5 |
| | : | |

---

**Diamond, Gallagher, Perez, JJ.**                                    **July 8, 2025**

## REPORT AND RECOMMENDATION

Judge Pappert has sanctioned Respondent Seth D. Carson for his repeated failure to comply with Court Orders. In a separate case, Judge Beetlestone has requested that we further evaluate "the matter of Carson's alleged payment of [his client's] living expenses." During our hearings, we asked Carson to explain this conduct as well as his repeated defiance of orders and discovery obligations in some 34 cases. Carson offered no credible or satisfactory explanation for his unprofessional conduct. To the contrary, his bizarre and contradictory legal arguments, as well as his dishonest and evasive testimony confirmed to the Panel that he should not be practicing before us. Accordingly, we recommend Carson's disbarment from the bar of this Court.

### I.    BACKGROUND

Carson graduated from the University of the District of Columbia Law School in 2013 and was admitted to the Pennsylvania bar in 2015. He was admitted to the bar of this Court on August 2, 2018. According to Carson, "almost all [his] cases are in this Court," (although we found three cases in which three other federal courts sanctioned him). (Doc. No. 16 6:21-22.) He previously worked at the Derek Smith Law Group until he was fired in March of 2024. (Id. at 7:3-4.) The Group has sued Carson for, inter alia, stealing firm funds. That matter is presently pending before Judge Hodge. Derek Smith Law Group, PLLC, v. Seth Carson, No. 25-cv-1238.

## II.    CONDUCT BEFORE JUDGE PAPPERT

In 2022, Carson brought a discrimination action against Tasty Baking Company, which had employed Carson's client.  Lynch v. Tasty Baking Co., Dkt. 23-4445 (Pappert, J.).  On July 1, 2024, Judge Pappert issued an Order requiring the parties to make initial disclosures within fourteen days and scheduled a pretrial conference for July 3, 2024.  (Dkt. 23-4445, Doc. No. 24.)  At the conference, Judge Pappert directed Carson promptly to return to Tasty signed authorizations for his client's medical records.  (Dkt. 23-4445, Doc. No. 38 at 15-16.)  Carson did not provide the authorizations until August 15, 2024, despite repeated reminders and requests from Tasty's counsel.  (Dkt. 23-4445, Doc. No. 31-2 at 2-3.)  Because Carson still had not provided his initial disclosures, Judge Pappert held a status conference on September 4, 2024, and ordered Carson to: 1) serve the initial disclosures that same day; 2) confirm with Tasty's counsel that they had subpoenaed Lynch's correct medical providers; and 3) timely respond to Tasty's discovery requests (due on September 9, 2024).  (Dkt. 23-4445, Doc. No. 38 at 17-18.)

Carson failed to comply with all three orders.  He did not serve his initial disclosures until the following day.  (Dkt. 23-4445, Doc. No. 31 at 4.)  Carson failed to name Lynch's medical providers, and did not respond to Tasty's discovery requests by September 9, 2024.  (Id. at 5.)  Rather, on September 12, 2024, Carson sent Tasty's counsel a text message: "I will get you the responses today."  (Id. at 6.)  Carson did not, however, and Tasty moved for sanctions on September 14, 2024.  (Id.)  Carson failed to respond to the sanctions motion.

During the October 8, 2024 hearing on the motion, Judge Pappert noted that Carson had similarly ignored his professional obligations in another case before Judge Pappert earlier that year.  (Dkt. 23-4445, Doc. No. 38 at 27.); see Order, Cooper v. Germantown Friends Sch., No. 23-5005, (E.D. Pa. May 21, 2024) (ECF No. 24) ("[P]laintiff's counsel violat[ed] multiple court

orders.")  Judge Pappert cautioned Carson:

> Mr. Carson, it's very frustrating.  It's very frustrating.  Practicing law should not be this way.

(Dkt. 23-4445, Doc. No. 38 at 39.)

Carson's contradictions during the hearing confirmed his dishonesty.  Carson first said that he did not respond to the sanctions motion because he thought Judge Pappert was expecting only an oral response at the hearing.  (Id. at 19-20.)  Remarkably, Carson then said that he did not respond because he had been unaware of the motion.  (Id. at 22.)  Judge Pappert ordered: 1) Tasty to file a supplemental brief in support of its fee request and, 2) Carson to respond timely.  (Id. at 40-41.)  Carson submitted no response.  In imposing sanctions, Judge Pappert noted that Carson "has failed to obey at least three of the Court's scheduling, discovery, and other pretrial orders." (Dkt. 23-4445, Doc. No. 43 at 7.)  Judge Pappert ordered Carson to pay Tasty $32,756.92 by check no later than November 18, 2024 for the counsel fees Tasty incurred as a result of Carson's misconduct.  (Dkt. 23-4445, Doc. Nos. 43 & 44.)    On October 30, 2024, Tasty again moved for sanctions, urging that Carson continued to shirk his discovery obligations.  (Dkt. 23-4445, Doc. No. 45.)  On November 20, 2024, Tasty informed Judge Pappert that Carson had yet to pay Tasty the sanctioned amount.  (Dkt. 23-4445, Doc. No. 50.)

At the January 8, 2025 hearing on the second sanctions motion, the parties announced that the case had settled, with Carson agreeing to contribute his fee award (some $2,000) toward the sanction.  (Dkt. 23-4445, Doc. No. 57.)  The parties further agreed Carson would then pay the remaining balance in two $15,000 installments.   (Id. at 3-4.)  Judge Pappert dismissed the case pursuant to Local Rule 41(b), but retained jurisdiction to enforce the sanction.  (Dkt. 23-4445, Doc. No. 55.) The parties were ordered to submit a joint status update every sixty days, beginning on January 15, 2025.  (Id.)

On January 24, 2025—after Carson had failed to contribute to a status report or make any payments to Tasty—Judge Pappert ordered him to show cause why he should not be held in contempt. (Dkt. 23-4445, Doc. No. 59.) At the February 5, 2025 show cause hearing, Carson stated that Tasty's counsel refused to accept the $2,000 payment by credit card. (Dkt. 23-4445, Doc. No. 67 at 5.) Judge Pappert discredited Carson and held him in contempt. (Dkt. 23-4445, Doc. No. 61.) On February 18, 2025, Tasty informed Judge Pappert that Carson had yet to make any payments. (Dkt. 23-4445, Doc. No. 64.) Later that same day, Carson reported that he had made his first payment and that he was "working to address the issues that led to the sanction." (Dkt. 23-4445, Doc. No. 65.)

Judge Pappert referred "the question of whether Mr. Carson's conduct in this case . . . violated the rules of professional conduct" to Chief Judge Goldberg for possible action by the Discipline Committee. (Id.); see Local R. Civ. P. 83.6.V(C). On February 19, 2025, Judge Pappert stayed further imposition of the sanction, pending completion of the instant disciplinary proceedings. (Dkt. 23-4445, Doc. No. 67.)

Carson has not appealed any of Judge Pappert's rulings or orders.

### III.    CONDUCT BEFORE JUDGE BEETLESTONE

This matter arose from another employment discrimination action against Tasty Baking Company and its employees' union. Ayala Sr. v. Local 6 Bakery Confectionary & Tobacco Workers Int'l, No. 22-3849 (Beetlestone, J.) During an October 31, 2023 status conference, Carson stated that he had been paying for a hotel room in Philadelphia for his client, Jose Ayala, because Ayala's living situation had become unstable. (Dkt. 22-3849, Doc. No. 52 at 1-2.) During Ayala's November 9, 2023 deposition, however, he testified that he had been homeless, but "my attorney has been providing shelter to me," and that he was "just thankful and grateful to have

room and board and safety." (Doc. No. 44-6 at 13.)

On November 27, 2023, Tasty moved to disqualify Carson on conflict of interest grounds. (Dkt. 22-3849, Doc. No. 44.) Carson responded that he had "never paid for his client's living expenses," explaining that the hotel expenses were connected to the litigation. (Dkt. 22-3849, Doc. No. 45 at 5.)

On January 10, 2024, Judge Beetlestone denied Tasty's disqualification motion, but observed that Carson had written that he "covered [Ayala's] travel and accommodation expenses for a period of one month," when only nine days elapsed between the Court scheduling Ayala's deposition and the date the deposition took place. (Dkt. 22-3849, Doc. No. 52 at 5; Doc. No. 53.) Noting the contradictions between Ayala's deposition testimony and Carson's statements to the Court, Judge Beetlestone referred the matter for the Discipline Committee's consideration. (Dkt. 22-3849, Doc. No. 52 at 7.)

## IV.    DISCIPLINARY PROCEEDINGS

On January 12, 2024, Chief Judge Sanchez referred the matter of Carson's conduct before Judge Beetlestone to the Discipline Committee. (Doc. No. 1.) On January 29, 2025, Chief Judge Goldberg referred the matter of Carson's conduct before Judge Pappert to the Committee as well. (Doc. No. 2.) The Chief Judge appointed Amy L. Kurland as Disciplinary Counsel to investigate "whether there is probable cause to believe that Respondent violated any provision of the Pennsylvania Rules of Professional Conduct (adopted by this Court), in connection with his activities in" Lynch and Ayala. (Doc. No. 3. ((citing Local R. Civ. P. 83.6.V(C) ("This Court may at any stage appoint counsel to investigate and/or prosecute the proceeding under this Rule."))); see also Local R. Civ. P. Ann. 83.6 n.4(a) (2009 ed.) ("[T]he federal court retains the right to select its own attorney to investigate and/or prosecute disciplinary complaints.").

In her Petition for Rule to Show Cause, Ms. Kurland urged that Carson had: (1) violated Rules 1.8(e) and 3.3 by paying for his client's living expenses beyond any related litigation and by making false statements of fact and law to Judge Beetlestone; (2) violated Rules 3.2 and 3.4 by ignoring three of Judge Pappert's pretrial orders and thus obstructing his opponents access to key evidence in discovery, and; (3) violated Rules 1.1 and 1.3 by maintaining an inappropriately high caseload that leaves him unable to "manifest the competence and diligence required of counsel." Ms. Kurland further urged that "[i]n addition to violating the respective rules cited above, all of the above constituted misconduct within the meaning of Pennsylvania Rule of Professional Conduct 8.4(a)." (Doc. No. 4 ¶¶ 5-6.) Ms. Kurland also noted that Carson had been sanctioned or chastised by Judges of this Court in nine other cases for flouting his discovery and professional obligations. (Id. ¶ 7.)

On March 27, 2025 the Chief Judge granted the 30-day extension Carson requested to respond to the Petition to give him time to retain counsel. He never did so. (Doc No. 6.) On April 28, 2025, Carson filed a pro se Response in which he did not dispute his misconduct in six of the eleven cases Ms. Kurland discussed. (See Doc. No. 8 at 8 ("The record of these incidents is accurate.")). Nor did he deny that he had repeatedly violated the Rules of Professional Conduct. (Id.) Rather, he acknowledged "that [he] need[s] to get help," but asked that he be permitted to continue practicing before this Court while he seeks help. (Id.)

Carson discussed only five of the eleven cases in the Petition, and offered lame or contradictory excuses for his actions. Carson first stated that he "admittedly allowed [Ayala] to

use the [hotel] rooms for a little longer than up until the day of [his] deposition." (Id. ¶ 16.)

> It felt like I was doing the right thing and there was no part of me that was trying to create a conflict of interest or implicate any of the concerns that the rule is meant to guard against . . . . I have learned that sometimes when it may feel like I am doing a good deed, there are equally or more important considerations that I must acknowledge. I apologize for the decision, and I will not do it again.

(Id. at 5.) In his next sentence, however, Carson recanted this seeming acceptance of responsibility: "I would like to point out that the conclusions of [Ms. Kurland] in this matter were based on the same information that Judge Beetlestone concluded was insufficient to decide." (Id.)

> Carson offered no explanation for his actions in Lynch:

> [T]he most I can say in defense of my conduct is that I am extremely disappointed in myself. For the past year I have been trying to get myself out of a hole. There are plenty of personal issues that I could talk about that have been a significant distraction, but at the same time, I recognize that I need to get help.

(Id. at 6.) In three other cases (before Judges Murphy, Wolson, and Quiñones) mentioned in the Petition, Carson said that he was overwhelmed by "manag[ing] e-discovery" and other obligations following his departure from Derek Smith Law Group. (Id.) Carson stated that he "had no help and was just buried in work to the point where the hours in the day were insufficient to complete all the work." (Id. at 7.) Yet, his conduct in those matters was of a piece with his misconduct in all the cases referenced by Ms. Kurland. Accordingly, Carson's characterization notwithstanding, most of the misconduct mentioned in Ms. Kurland's Petition occurred *before* he left the Group. Carson concluded his Response by acknowledging his transgressions:

> I feel like I have it in me to do better and I hope for that opportunity. But I am not going to make any excuses for what is a clear record.

(Id. at 8.)

A. First Disciplinary Hearing

We scheduled a hearing for June 3, 2025 at 3 p.m. (Doc. No. 9.) Carson arrived late (as

the Panel was about to recess). (Doc. No. 16 at 4.) Although minutes later he would testify that "almost all of [his] cases are in this Court," Carson told us that he was late because he had mistakenly directed his Uber driver to drop him off several blocks from the Courthouse. (Id.)

After Ms. Kurland informed the Panel that she would rest on her Petition, Carson asked to make a brief statement. (Id. at 4-5.) When we informed Carson that he would be under oath and subject to cross-examination, he hesitated, and said that he would rest on his Response. (Id. at 5.) Carson then changed his mind and was sworn. (Id.)

In his brief, meandering testimony, Carson explained that "the inability to practice law in this Court would, in fact, result in [his inability] to practice law, at least for in the foreseeable future." (Id. at 6.) Although Carson understood the seriousness of the accusations, "there was no bad faith to the extent that a bad faith standard applies. There was no gamesmanship . . . . [and] there was no willful or malicious conduct of any kind." (Id. at 7.) Carson acknowledged that he "bit off more than [he] can chew when [he] left the Derek Smith Law Group." (Id. at 7-8.)

As an alternative to discipline, he suggested "a moratorium on [Carson] filing cases," and referring "maybe a majority of [his current] cases" to other, more experienced counsel. (Id. at 10.) When we asked if Carson was proposing his immediate suspension from our bar, he demurred, stating that he would like time to finish several pending cases. (Id.) It became clear that Carson knew very little about the Court's disciplinary procedures. (See id. at 13 ("I guess I was just asking how that would work.")). Accordingly, we recessed so that he could review our Local Rules, which he evidently had not previously read. (Id. at 14.)

When the hearing resumed, Carson continued to vacillate, but did not agree to a suspension. (Id. at 15-16.) When asked if he had been sanctioned by judges in other courts, Carson answered that he is a member of the bars of the Middle District of Pennsylvania, the Western District of

Pennsylvania, and the Third Circuit:

> I don't think I have been [sanctioned by a judge of those courts]. Like, there might
> be one example from a long time ago, like, discovery situations. But I don't think
> there is. I don't think I've been sanctioned in other courts, Your Honor.

(Id. at 17-19.) Carson believed he had been sanctioned "about 13 times" by members of this

Court. (Id. at 17.)

The following day, the Panel learned of 22 additional cases in which Carson has been

sanctioned, criticized, or ordered to comply with his discovery or professional obligations—

including by Judges in the Middle and Western Districts, as well as the Third Circuit. (Doc. No.

12.) Because these cases were not mentioned in the Petition, we informed Carson that he could

address the cases in writing and at a second hearing. (Id.) Although we granted Carson's request

for both, he submitted no additional briefing. (Id.)

On June 9, 2025, in light of the serious allegations made against Carson, his many pending

cases, and the potential harm to his clients, the Chief Judge ordered Carson to inform his clients,

in writing, of the instant proceedings. (Doc. No. 15.) The Chief Judge further ordered Carson to

make these communications to every client with a matter in this Court no later than June 24, 2025,

and to provide to this Panel a copy of each such communication no more than 24 hours after it was

made. (Id.) Although Carson did not object to this Order, he did not comply with it.

B. Second Disciplinary Hearing

At the July 2, 2025 hearing, Carson offered only confusing and contradictory testimony

and legal argument, making it apparent that he had requested the hearing simply to cause delay.

At the outset, Carson contradicted himself with respect to Chief Judge Goldberg's June 9th

Order. He first stated that he had complied with the Order and informed his clients in writing of

the instant proceedings. (Doc. No. 18 at 2.) Yet, he also told us that he did not have any copies

of those writings (despite his obligation to provide them to us). (Id.) He said that the writings were on his computer—which he had brought to the hearing—but refused to retrieve them. (Id. at 5.) He testified that he had "given writings to some clients," but then said that he did not have to comply with the Order because it: 1) was not clear; and 2) was contrary to law and should be stricken. (Id. at 5-7.)

Carson then asked for the recusal of the Panel Chair and "all the judges that have been assigned to this hearing." (Id. at 7.) His reasons for seeking recusal were confusing. (See id. ("[T]he [Panel Members] are presiding over their own cases.")). Carson offered that the Panel Chair had "ex parte" informed other Eastern District Judges of the instant proceedings. (Id.) He also urged recusal because the Panel Members had purportedly acknowledged at the June 3rd hearing that they had improperly learned of "confidential" conversations between him and other members of this Court. (Id. at 8.)

Finally, he argued that our consideration of the 22 additional cases included in the Chief Judge's June 9, 2025 Order would violate his due process rights because the Order—which included the name and docket number of each case—did not provide sufficient information for him to craft a response. (See id. at 11 ("I don't think I should have to guess at the cases.")).

## V.    LEGAL STANDARDS

The Court has authority "to control admissions to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); In re Surrick, 338 F.3d 224,

229 (2003).  Having adopted the Pennsylvania Rules of Professional Conduct, this Court may discipline attorneys appearing before us who violate those Rules:

> For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this court may be disbarred, suspended from practice before this court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

<u>See</u> Local R. Civ. P. 83.6(IV).

The Third Circuit has cautioned that, "[d]ue to the vital societal interests at state, any doubt as to a Petitioner's fitness to practice in a federal court should be resolved in favor of the public." <u>In re Mitchell</u>, 901 F.2d 1179, 1189 (3d Cir. 1990) (internal citations omitted).

## VI.    DISCUSSION

At both hearings, Carson asked us to allow him to complete work on "certain cases . . . that are very far into the litigation process" before any discipline took effect.  (Doc. No. 16 at 11; Doc. No. 18 at 15.)  He also requested "an opportunity to continue working with another attorney as second chair on certain cases that I have litigated for some time."  (Doc. No. 8 at 8.)  We cannot recommend either alternative.   Rather, in light of both Carson's evident contempt for his professional obligations and his untruthful testimony before us, we strongly recommend his disbarment.

### *Violations of the Rules of Professional Conduct*

Based on the undisputed factual findings of Judges Pappert and Judge Beetlestone, we conclude that Carson violated Rules of Professional Conduct 1.1 (Competence), 1.3 (Diligence), 1.8 (Providing Financial Assistance to a Client), 3.2 (Expediting Litigation), 3.3 (Candor to the Tribunal), 3.4 (Fairness to Opposing Party and Counsel) and 8.4 (Misconduct), in <u>Lynch</u> and <u>Ayala</u>.

Rule 1.1 requires that: "A lawyer shall provide competent representation to a client.

Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Pa. R.P.C. 1.1. Judge Pappert found that: "From the get-go, the plaintiff's attorney, Seth Carson, has treated as optional the Court's orders, the Federal Rules of Civil Procedure, his opponent's requests and his own professional obligations . . . . [G]iven his numerous transgressions and failure to even contest his opponent's allegations, the Court in its discretion could throw this case out for good." (Dkt. 23-4445, Doc. No. 43 at 1-2.)

Rule 1.3, Comment 2, provides that: "A lawyer's work load must be controlled so that each matter can be handled competently." Pa. R.P.C. 1.3 cmt. 2. At the hearing on Tasty's first sanctions Motion, Judge Pappert informed Carson: "I have detected that you have too many cases. You have more cases than you can handle. You lack the administrative support and the legal help for you to handle those cases. But that can't serve as an excuse anymore for any of these violations, and I'm not going to allow it to." (Dkt. 23-4445, Doc. No. 38 at 44.)

Rule 1.8 requires that: "A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation [except to advance court costs and expenses of litigation]." Pa. R.C.P. 1.8(e). Carson has acknowledged that he: "admittedly allowed [his client] to use the [hotel] rooms for a little longer than up until the day of the deposition." (Doc. No. 8 at 4).

Rule 3.2 requires that: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Pa. R.P.C. 3.2. The Comment to the Rule provides: "Dilatory practices bring the administration of justice into disrepute." Judge Pappert found that: "Carson did not timely respond to any of the three motions Tasty filed in this case, including the motion for sanctions. Nor did he respond to Tasty's supplemental filing in support of its fee request, despite the Court's order that he do so. He also did not timely respond to Tasty's requests

12

for admissions." (Dkt. 23-4445, Doc. No. 43 at 8.)

Rule 3.3 requires that: "A lawyer shall not knowingly: make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Pa. R.P.C. 3.3(a). In opposing Tasty's disqualification motion, Carson wrote to Judge Beetlestone: "Plaintiff's counsel never paid for his client's living expenses. All expenses paid for were litigation expenses connected to the litigation of this case." (Dkt. 22-3849, Doc. No. 45 at 5.) Yet, as we have discussed, in his response to Ms. Kurland's Petition, Carson admitted to paying the cost of his client's stay in the hotel, "for a little longer than up until the day of the deposition." (Doc. No. 8 at 4.) Carson thus knowingly made a false statement to Judge Beetlestone.

Rule 3.4, Comment 2, provides that: "Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is . . . concealed." Pa. R.P.C. 3.4. Judge Pappert found that Carson's discovery abuse had "prevented his opponent from conducting any meaningful discovery and preparing defenses to his client's claims." (Dkt. 23-4445, Doc. No. 43 at 2.)

To the extent that Carson offered excuses and tortured explanations for his misconduct, we discredit that testimony. Accordingly, we find that Carson violated Rules of Professional Conduct 1.1, 1.3, 1.8 3.2, and 3.3.

Finally, we find that all Carson's misconduct was "prejudicial to the administration of justice," in violation of Rule 8.4. Pa. R.P.C. 8.4.

## VII.    DISPOSITION

We next must determine what discipline we believe is warranted.

Considering only the 11 cases referenced in Ms. Kurland's Petition—the facts of which Carson does not dispute—we believe his repeated transgressions warrant his disbarment.  This conclusion is bolstered by Carson's misconduct in the 23 additional cases that were discussed at the July 2nd hearing.

The American Bar Association's Standards for Imposing Lawyer Sanctions have provided guidance to this Court.  See, e.g., Malofiy, Dkt. 14-mc-139, Doc. No. 52.  The ABA counsels that, "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose."  ABA, Standards for Imposing Lawyer Sanctions (1986, amended 1992) § 9.1.  The ABA condemns lawyers who make false statements to the court or otherwise abuse the legal process.  See id. § 6.1 ("Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information."), § 6.2 ("Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and . . . causes serious or potentially serious interference with a legal proceeding.").

The ABA also counsels that disbarment is appropriate when a lawyer "engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to the client." Id. § 4.41(c); see also Office of Disciplinary Couns. v. Davis, 614 A.2d 1116, 1122 (Pa. 1992) ("A pattern of misconduct, including neglect of legal matters, warrant[s] disbarment.")  The scope of Carson's pattern of professional misconduct and legal neglect is astonishing.  In all, including Ayala and Lynch, Carson has been sanctioned, criticized, or directed to comply with his

14

discovery or professional obligations in some 30 cases in this Court:

- Stanley v. Aion Mgmt. LLC, No. 18-cv-5182 (E.D. Pa. May 5, 2019) (ECF No. 15) (Diamond, J.)
- Colon v. Philadelphia Police Dept., No. 18-cv-4769 (E.D. Pa. November 12, 2019) (ECF No. 21) (Wolson, J.)
- Blue v. Benefits Data Trust, No. 19-cv-2285 (E.D. Pa. Jan. 16, 2020) (ECF No. 16) (Robreno, J.)
- Williams v. Republic Servs., Inc., No. 19-cv-1819 (E.D. Pa. Jan. 31, 2020) (ECF No. 26) (Robreno, J.)
- Lehrbaum v. Matt-Bri, Inc., No. 19-cv-4443 (E.D. Pa. Feb. 25, 2020) (ECF No. 16) (Joyner, J.)
- Middle East Forum v. Reynolds-Barbounis, No. 19-cv-5697 (E.D. Pa. Mar. 20, 2020) (Doc. No. 45) (Sanchez, J.)
- Doll v. Isaacs & Cohen, LLC, No. 19-cv-5027 (E.D. Pa. Apr. 2, 2020) (ECF No. 15) (Pratter, J.)
- Ball v. Park Racing, No. 19-cv-04342 (E.D. Pa. May 22, 2020) (ECF No. 21) (McHugh, J.)
- Sheibel v. Northeast Treatment Centers, Inc., No. 19-cv-2684 (E.D. Pa. June 18, 2020) (ECF No. 21) (Robreno, J.)
- Brady v. Middle East Forum, No. 19-cv-5082 (E.D. Pa. Aug. 13, 2020) (ECF No. 71) (Kearney, J.)
- Dunmore v. Trustees of the Univ. of Pennsylvania, No. 19-cv-3867 (E.D. Pa.) (ECF No. 18 Aug. 26, 2020) (Joyner, J.)
- Guzman v. Farmer's Pride, Inc., No. 19-cv-5992 (E.D. Pa. Oct. 13, 2020) (ECF No. 25) (Marston, J.)
- Barbounis v. Middle East Forum, No. 12-cv-5030 (E.D. Pa. Dec. 4, 2020) (ECF No. 85) (Wolson, J.)
- McNulty v. Middle East Forum, No. 19-5029, 2020 WL 7769737 (E.D. Pa. Dec. 30, 2020) (Strawbridge, J.)
- Powers v. Southeastern Pa. Transp. Auth., No. 19-cv-4685 (E.D. Pa. Jan. 26, 2022) (ECF No. 58) (Goldberg, C.J.)
- Espinoza v. CJ Logistics America, LLC, No. 21-cv-5225 (E.D. Pa. June 21, 2022) (ECF. No. 32) (Leeson, J.)
- Bouden v. Parx Casino, No. 22-cv-2265 (E.D. Pa. Nov. 16, 2022) (ECF No. 10) (Bartle, J.)
- Dennis v. Sequential Technology Int'l, LLC, No. 22-cv-2927 (E.D. Pa. Jan. 20, 2023) (ECF No. 20) (Leeson, J.)
- D'Angelo v. Vanguard Group, Inc., No. 21-cv-4813 (E.D. Pa. Jan. 23, 2023) (ECF No. 49) (Kearney, J.)
- Poretta v. City of Philadelphia, No. 22-4026 (E.D. Pa. Oct. 13, 2023) (ECF No. 27) (Hodge, J.)
- Hall v. City of Philadelphia, No. 23-cv-1381 (E.D. Pa. Dec. 13, 2023) (ECF No. 18) (Bartle, J.)
- Franke v. Giant Food Stores, No. 23-cv-1902 (E.D. Pa. Dec. 20, 2023) (ECF No. 27)

(Leeson, J.)

- <u>Wagner v. X.L. Global Services, Inc.</u>, No. 23-1840 (E.D. Pa. Feb. 4, 2024) (ECF No. 35) (Bartle, J.)
- <u>Byron Love-Cooper v. Germantown Friends School</u>, No. 23-5005 (E.D. Pa. May 21, 2024) (ECF No. 24) (Pappert, J.)
- <u>Dormann v. SEPTA</u>, No. 23-cv-3520 (E.D. Pa. June 18, 2024) (ECF No. 21) (Murphy, J.)
- <u>Kalitowski v. United Parcel Service</u>, No. 23-0992 (E.D. Pa. July 23, 2024) (ECF No. 53) (Quiñones Alejandro, J.)
- <u>Akil v. City of Philadelphia</u>, No. 23-cv-2654 (E.D. Pa. July 29, 2024) (ECF No. 39) (McHugh, J.)
- <u>McDowell v. United States</u>, No. 22-cv-4204 (E.D. Pa. Apr. 9, 2025) (ECF No. 37) (Perez, J.)

Circuit Judge Bryson (sitting by designation in the District of Delaware) summarized Carson's misconduct in <u>Katz v. Beebe Healthcare</u>, a case Carson initiated some two years before the Derek Smith Law Group fired him.  Dkt. No. 22-625, 2024 WL 1885555 (D. Del. Apr. 30, 2024).  Judge Bryson well described Carson's misconduct in almost all 34 cases we have reviewed:

> There has been a history of dilatoriness on the part of [Carson] in this case.  The one item of discovery that the plaintiff produced before the [defendants'] sanctions motion was filed (the initial disclosure) was produced nine months after it was due.  Other discovery requests were not complied with at all prior to the filing of the sanctions motion.  Thus, this is not just a case of dilatoriness; it is a case of repeated failure to produce required materials amounting to almost complete nonresponsiveness.

<u>Id.</u> at *4.

At the July 2nd hearing, Carson contended for the first time that our considering his conduct in <u>Katz</u> and the other additional cases would violate his due process rights.  (Doc. No. 18 at 11.)  He urged that we had provided insufficient information about each case for him to respond.  (<u>Id.</u>).  Yet, these are Carson's own cases, identified by docket number and Judge, and fully available on ECF.

Carson failed to submit a brief and offered no supporting legal authority.  When asked why he submitted nothing in writing, Carson said: "[T]he most honest answer is opportunity costs for

time," although he acknowledged that he did not request more time to prepare a brief. (Doc. No. 18 at 14.) Remarkably, he then said that he had prepared a 25-page brief, but had declined to submit it because "filing a brief like that is kind of scary." (Id.) These contradictory, incredible statements notwithstanding, Carson does not dispute that he had notice that we proposed considering his conduct in these additional cases and was afforded the opportunity to be heard on them.

In his June 3rd and July 2nd testimony, Carson sought to attribute his professional transgressions to the COVID-19 pandemic and to his "difficult" March 2024 separation from the Derek Smith Law Group. Yet, all the members of our bar weathered the pandemic without repeatedly disregarding their professional obligations. Moreover, as we have discussed, Carson has continuously engaged in discovery abuse and otherwise neglected his professional responsibilities since shortly after he was admitted to our bar in 2018. Carson's testimony that "[t]here was no gamesmanship" in his transgressions is painfully untrue. (Doc. No. 16 at 7.) By ignoring court orders and, as Judge Pappert stated, "marching to the beat of his own drum" regarding discovery, Carson has displayed indifference to and contempt for his professional obligations. (Dkt. 23-4445, Doc. No. 43 at 2.)

Carson's request in his Response to Ms. Kurland's Petition for "an opportunity to try and do better" is disingenuous. (Doc. No. 8 at 8.) He has had repeated opportunities "to try and do better." For example, in Brady v. Middle East Forum, Judge Kearney held Carson in contempt after he skipped an initial pretrial conference. (Dkt. 19-5082, Doc. No. 71.) At the July 6, 2020

show cause hearing, Judge Kearney told Carson:

> Sir, you can't get back your reputation. You can win a thousand cases and not get back your reputation. I ask you as a member of the bar of this Court, I'm going to give you a chance before I report you to some disciplinary board to show us, as a Court, this was an anomaly. This was aberrant behavior. If it's not, I've made a record . . . .

(Dkt.19-5082, Doc. No. 75 at 19.)

In the five years since this admonition, Carson has repeatedly shown that his misconduct before Judge Kearney was no anomaly. In a second case before Judge Kearney two years later, Carson missed the deadline for filing a notice of appeal. D'Angelo v. Vanguard Group, Inc., No. 21-cv-4813. Although Carson's handwritten notes revealed he had written—and twice underlined—the correct deadline, Carson attributed the mistake to a computer glitch and then blamed his two paralegals. (Dkt. 21-4813, Doc. No. 49 at 1-2.) Judge Kearney discredited Carson and denied his request for an extension of time to file a notice of appeal. (Id. at 18.) The Third Circuit then dismissed the case. D'Angelo v. Vanguard Grp., No. 22-3362, (3d Cir. February 8, 2023) (Doc. No. 11).

There are other instances where Carson's misconduct has harmed his clients. In Ayala, Judge Beetlestone granted a Motion to Strike Carson's pleadings in opposition to summary judgment after Carson missed the deadline to respond—a deadline that had repeatedly been extended at his request. (Dkt. 22-3849, Doc. No. 82.) Several of Carson's other cases were dismissed after he failed to respond to a dispositive motion. See, e.g., Doll v. Isaacs & Cohen, LLC, No. 19-5027, 2020 WL 1624237, at *1 (E.D. Pa. Apr. 2, 2020) (Pratter, J.) ("The Court dismisses this action . . . . [A]fter [Plaintiff] failed to respond to the pending motion to dismiss within 21 days, the Court ordered [Plaintiff's] response. Because [Plaintiff] did not file a response pursuant to the Court's order, the Court considers the motion unopposed."); Colon v. Philadelphia

18

Police Dept., No. 18-4769, 2020 WL 1076038, at *3 (E.D. Pa. Mar. 5, 2020) (Wolson, J.) ("[Plaintiff's] failure to respond to the motion for summary judgment leaves the Court to take the City's statement of undisputed material facts as true. Those facts establish that there is no claim for trial here. The Court will therefore grant the Motion.") As we have discussed, in the ABA's view, the harm to his clients Carson has caused warrants his disbarment. See ABA, Standards for Imposing Lawyer Sanctions § 4.41(c).

Carson's untruthful testimony before us further aggravated his transgressions. See ABA Standards § 9.22(f) ("[S]ubmission of false evidence, false statements, or other deceptive practices during the disciplinary process" is aggravating factor for discipline). Once again, at the first hearing, he testified that he had never been sanctioned by a Judge in the Middle or Western District of Pennsylvania, or the Third Circuit—although "there might be one example from a long time ago." (Id.) Yet, as we subsequently learned, Carson has been sanctioned by Judges in the Middle and Western Districts and threatened with sanctions by the Third Circuit. See Memorandum Granting Order for Sanctions at 12, Shaw v. Vetforce, Inc. Pa., No. 23-cv-1868 (M.D. Pa. July 8, 2024) (ECF No. 24) ("The Court takes seriously the negligence and poor conduct of Plaintiff's counsel . . . . [A]s such, the Court finds the sanction of fees on Plaintiff's counsel is appropriate."); Memorandum Opinion on Motion for Sanctions, Nelatury v. Pennsylvania State Univ., No. 21-cv-279 (W.D. Pa. July 11, 2024) (ECF No. 130) ("Attorney Carson's failure to follow federal and local rules, as well as Court orders, has burdened this Court. He has created a great deal of extra unnecessary work for the Court. Attorney Carson has missed each and every deadline since Defendants filed their summary judgment motion. He has prevented the Court from adjudicating the merits of summary judgment in a timely fashion and has increased the cost of this litigation."); Order on Motion to Dismiss Appeal, Williams v. Linode LLC, No. 24-1793) (3d Cir. Dec. 26,

2024) (ECF No. 36) ("Counsel for Appellant is admonished that he is obligated to meet all future deadlines and to follow all Court rules and if he fails to do so, the Court will consider imposing appropriate sanctions.").  Once again, he has been sanctioned in the District of Delaware.  <u>Katz</u>, No. 22-625, 2024 WL 1885555 (D. Del. Apr. 30, 2024).

Carson also failed to comply with the Chief Judge's Order to notify clients of the instant proceedings and to provide this Panel with a copy of each notice.  See <u>ABA Standards</u> § 9.22(e) ("[I]ntentionally failing to comply with rules or orders of the disciplinary agency" is an aggravating factor for discipline).  Carson argued at the second hearing that the Order was unclear and should be stricken as unlawful.  (Doc. No. 18 at 6-7.)  Yet, Carson did not challenge the Order when it was issued.  Although he told us on July 2nd that he had binding legal authority to show the Order's invalidity, he offered us nothing.  Moreover, the Chief Judge's Order was perfectly clear; presumably that is why Carson initially told the Panel that he had complied with it—yet another falsehood.

Even assuming that the Panel had the authority to "strike" an Order of the Chief Judge (surely a dubious suggestion), there is no basis for doing so.  No law, rule, or constitutional provision prevents the Chief Judge from requiring counsel to inform his clients of serious circumstances that could injure them.  To the contrary, the Rules of Professional Conduct require counsel to inform their clients if they do not carry malpractice insurance.  Pa. R. Pro. Conduct 1.4(c); <u>see also</u> <u>Access to Disciplinary Information and Confidentiality</u>, Pa. R. Disciplinary Enf't 402(c)(5) ("[A]ll proceedings involving allegations of misconduct by or disability of an attorney shall be kept confidential unless . . . there is a need to notify another person or organization . . . in order to protect the public, the administration of justice, or the legal profession.").

Carson has no valid basis to seek the recusal of the Chair or the other Panel Members.  In

objecting to "ex parte" communications from the Panel advising Judges of the instant proceedings, Carson ignores that the Chief Judge has referred this matter to us so that we may provide the full Court with a report and recommendation. (Doc. Nos. 1, 2.) In conducting these disciplinary proceedings, the Panel Members thus act as representatives of the full Court, which alone will determine whether the imposition of discipline is warranted. Communications between the Panel and Judges of this Court about the instant proceedings are thus hardly "ex parte." To the contrary, our Local Rules require those communications. Local R. Civ. P. 83.6(V)(E).

Similarly baseless is Carson's suggestion that during the June 3rd hearing the Panel improperly referred to Carson's "private" conversations with Judges of this Court. Assuming such conversations occurred, neither the Panel nor Ms. Kurland mentioned them. Rather, Carson, in his Response to the Petition, offered that he had spoken privately with members of this Court about his professional difficulties. (See Doc. No. 8 at 8 ("There are many judges in this Court that have taken time to talk to me and try to help.")). Those conversations, whatever their substance, have no bearing on the disposition of the instant matter and provide no basis for the Panel's recusal.

## VIII.   CONCLUSION

Mr. Carson's misconduct in Lynch, Ayala and the other nine cases referenced in Ms. Kurland's Petition, as well as his untruthful testimony before us, requires his disbarment. Carson's misconduct in an additional 23 cases, and his failure to comply with the Chief Judge's June 9th Order, confirm our determination that Carson should not be practicing in this Court.

The purpose of attorney discipline is "to protect the public from unfit attorneys and to maintain the integrity of the legal profession and the judicial process." Office of Disciplinary Couns. v. Price, 732 A.2d 599, 606 (Pa. 1999). Carson's repeated refusals to comply with his professional obligations have harmed his clients and will continue to do so. In these circumstances,

it is evident that a reprimand or suspension would be inadequate to protect the public or maintain the integrity of the legal profession.  Unfortunately, only his disbarment will secure these goals.

For these reasons, we find that Ms. Kurland has established by clear and convincing evidence that Carson violated Pennsylvania Rules of Professional Conduct 1.1, 1.3, 1.8, 3.2, 3.3, and 8.4.  Upon consideration of the entire record, we believe the appropriate sanction for Carson's misconduct is disbarment from the bar of the United States District Court for the Eastern District of Pennsylvania.

### **RECOMMENDATION**

We recommend that Seth D. Carson be disbarred from the bar of the United States District Court for the Eastern District of Pennsylvania.


*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.


*/s/ John M. Gallagher*
_____
John M. Gallagher, J.


*/s/ Mia R. Perez*
_____
Mia R. Perez, J.